UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

FILED
APR 21 2016

*********************************************************************

| | | |
|---|---|---|
| LISA A. DAVIS, | * | CIV 12-5008 |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION AND |
| | * | ORDER DENYING PLAINTIFF'S MOTION |
| | * | FOR SANCTIONS |
| vs. | * | |
| CRESCENT ELECTRIC COMPANY, ("CESCO") a Delaware Corporation; JAMES M. SULLIVAN, CESCO 015 Branch Manager; MARTIN S. BURBRIDGE, President/CEO; JAMES R. ETHEREDGE, Sr. Vice Pres./CFO; CHRISTOPHER P. BRESLIN, Sr. Vice Pres./COO; DANIEL E. PHILIPPI, Vice Pres.-Human Resources; JAMES M. SWEENEY AND ASSOCIATES, INC., an Iowa Corporation; LIBERTY MOTORS, INC. ("LIBERTY"), a South Dakota Domestic Business; LARRY L. PATNOE, Liberty President; and DONALD E. PATNOE, Liberty President/Treasurer, | * | |
| Defendants. | * | |

*********************************************************************

Before the Court is Plaintiff Lisa Davis's (Davis) motion for sanctions against Defendants pursuant to Federal Rules of Civil Procedure 37, 26, and 11. For the following reasons, the motion is denied.

## BACKGROUND

This case involves alleged wage discrimination and retaliation against an employee, Davis. Davis formerly worked for Defendant Crescent Electric Supply Company ("CESCO"). CESCO "is an electrical distributor with 120+ locations and about 1550 employees throughout the United States." Second Supplemental Affidavit of Lisa A. Davis, Doc. 97-2 at 1. She began work at CESCO on August 31, 2005 as a desk clerk. During Davis's time at CESCO, Defendant

1

James M. Sullivan ("Sullivan") was her direct supervisor. For her position as a desk clerk, Davis received an hourly wage. In June 2010, Davis was promoted to a sales position–Quotation Specialist–as a replacement to Ken Herman ("Herman"). Prior to Davis accepting the position, Herman implied to Davis that she would receive commissions as part of being a Quotation Specialist. Sullivan, however, indicated only that Davis would receive a raise, but did not state that that raise would be in the form of commissions. Davis did receive a pay increase of $2.10, raising her pay rate of $12.40 per hour to $14.50 per hour.

As a Quotation Specialist, Davis received a list of jobs to bid on. She then had to request plans and produce counts of light fixtures to the customer. Prior to accepting the Quotation Specialist position, Davis had no experience in quotations. She was told, however, that she would not need product training. Training for the position itself was conducted between the incoming and outgoing Quotation Specialists.

On November 29, 2010, via email, Davis told Sullivan that she was informed by Herman that she would receive commissions as a part of the promotion. Davis wanted to know when she would receive the same. In a response email, Sullivan informed Davis that Herman did not have the authority to tell her that she would receive commissions, that commission pay for her position was not budgeted for the year, and that she received an hourly pay rate increase instead. Davis forwarded this two-email chain between her and Sullivan to a personal Yahoo email account. Davis claims she never sent a reply email to Sullivan.[1]

---

[1] The crux of Davis's pending motion for sanctions hinges on whether Davis sent a reply email to Sullivan. *See*, *infra*. The email exchange between Davis and Sullivan that Davis forwarded to her Yahoo email account began with Davis writing,

> Hello Jim [Sullivan],
>
> I was just curious. Kenny [Herman] told me that eventually I would be making commission when I moved to quotations. Can you tell me when that will start?
>
> Thank you,
>
> Lisa

Plaintiff's Brief in Support of Amended Motion for Sanctions, Doc. 93-3, at 1. Sullivan replied,
> Unfortunately Kenny shouldn't have told you that as he has nothing to do with employees wages (sic).
>
> You were given a substantial increase when moved into that position and I have no commission budgeted for 2011.
>
> We will have to discuss this at employee appraisals in February.

2

On January 1, 2011, Davis was moved to CESCO's warehouse in an effort to familiarize Davis with CESCO's products and help her successfully return to the Quotation Specialist position. Her pay rate was unaffected. On February 16, 2011, Davis was again reassigned, this time to Project Specialist. Her pay rate was again unaffected and her duties as Project Specialist were similar to the Quotation Specialist position, except that, as Project Specialist, Davis no longer bid on jobs.

In April 2011, Davis complained to CESCO of wage discrimination. Julie Skinner ("Skinner" or "Steinstra"), CESCO's HR Generalist, investigated Davis's complaint. As a result of the investigation, Skinner concluded that Davis's Quotation Specialist successor, Kody Mendel ("Mendel"), while receiving commissions, was making approximately $2,000 less than Davis. The investigation further concluded that Davis was moved out of the Quotation Specialist position as a result of her performance. Skinner informed Davis of her conclusions in a letter dated April 27, 2011, Doc. 69-10.

Between March and May 2011, Davis encountered behaviors of Mendel that she considered to be sexual harassment directed toward her. Interpreting these behaviors as retaliation for her discrimination complaint, Davis filed a complaint with CESCO HR again. Similar to the April 27 letter from Skinner related to the discrimination claim, Skinner sent Davis a letter on May 26, 2011 informing Davis of Skinner's conclusions related to the sexual harassment/retaliation claim. In the letter, Skinner stated that she believed Mendel should receive disciplinary action for the behavior detailed by Davis. What action was taken by CESCO is unclear from the current record.

On June 16, 2011, Davis resigned from CESCO. Shortly thereafter, she filed a claim of discrimination against CESCO with the Equal Employment Opportunity Commission (EEOC). On August 1, 2011, Skinner sent a response letter to the EEOC. Second Supplemental Affidavit of Lisa A. Davis, Doc. 97-2. To this letter was attached the two-email chain ("Exhibit 1A")[2] between Davis and Skinner from November 29, 2010 related to commissions. Doc. 97-2 at 3. *See, supra*, note 1 and accompanying text. Shortly thereafter, on August 23, 2011, Skinner accessed CESCO's email archives. Affidavit of Julie Skinner, Doc. 94, at 1. From the archives,

---

Jim
*Id.*

[2] The August 1, 2011 EEOC response letter and email are attached to this Memorandum Opinion and Order as Exhibit 1A.

3

Skinner retrieved the email exchange from Davis to Sullivan dated November 29, 2010, *Id.*, a version of which was attached to the August 1, 2011 response to the EEOC. This archive-retrieved email chain ("Exhibit 2")[3], Doc. 90-5, however, contained a third email, a reply email from Davis to Sullivan. Responding to Sullivan's explanation to Davis that she received an hourly pay rate increase instead of commissions, the third email read, "Ok. I was just wondering. I can live with that. Thank you." Doc. 90-5. This three-email chain was sent to the EEOC on August 29, 2011 by Skinner. Second Supplemental Affidavit of Lisa A. Davis, Doc. 97-3, at 3.[4]

Davis filed her complaint in federal court on February 8, 2012. On June 8, 2015, Davis's original attorney-of-record withdrew from the case and Davis's current attorney-of-record, Mario Gonzalez, began handling Davis's case. On June 29, 2015, Davis filed the instant motion for sanctions against Defendants. In the motion, Davis claims that Exhibit 2, namely the third email in the chain, was fabricated by Defendants. Accordingly, Davis asks the Court to sanction Defendants by (1) striking Defendants' responsive pleadings and entering default judgment in favor of Davis, (2) holding Defendants in contempt of court, (3) striking Defendants' motion for summary judgment, and (4) awarding Davis costs and attorney's fees.

## STANDARD OF REVIEW

In the Eighth Circuit, district court impositions of sanctions are governed by the abuse of discretion standard. *Perkins v. General Motors Corp.*, 965 F.2d 597, 602 (8th Cir. 1992) (upholding district court's imposition of sanctions under Federal Rules of Civil Procedure 11 and 26); *Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010) ("We review an order denying discovery sanctions for an abuse of discretion.") (citation omitted). "[T]he district courts [are

---

[3] The email has been attached to this Memorandum Opinion and Order as Exhibit 2.

[4] The email attached to Skinner's August 1, 2011 response letter appears to be the two-email chain between Davis and Sullivan on November 29, 2010 that Davis forwarded to a personal Yahoo email account. The second heading in the chain indicates that it was sent from the email address "Lisa.Davis@cesco.com" to "laspeedyg@yahoo.com." Plaintiff's Brief in Support, Doc. 90-3, at 1 and Second Supplemental Affidavit of Lisa A. Davis, Doc. 97-2, at 3. The record is unclear how Skinner came into possession of the two-email chain that was sent to the EEOC on August 1, 2011. Davis filed her complaint in federal court on February 8, 2012 and discovery closed on March 19, 2015. According to Defendants, the two-email chain was "produced by Davis and bates stamped as DAVIS 648 and is a printout of the chain as forwarded to Davis's Yahoo email account." Defendant's Brief in Opposition, Doc. 93, at 4. Davis asserts that Skinner must have accessed Davis's CESCO email account directly sometime before the August 1, 2011 EEOC response letter was sent and, thus, prior to Davis's discovery disclosures. *See* Plaintiff's Reply Brief, Doc. 96, at 7 ("Given the fact Skinner accessed Plaintiff's CESCO email account to obtain the November 29, 2010 email that she provided to the EEOC on August 1, 2011, there was no reason for her to access the CESCO archives to retrieve the email a second time on August 23, 2011."). Thus, there are two versions of the two-email chain: the copy provided to the EEOC on August 1, 2011, Exhibit 1A, and the copy disclosed by Davis to Defendants during discovery ("Exhibit 1B"). Exhibit 1B has also been attached to this Memorandum Opinion and Order.

given] a large amount of discretion in regulating and sanctioning misconduct which occurs in proceedings before it." *Good Stewardship of Christian Center v. Empire Bank*, 341 F.3d 794, 797 (8th Cir. 2003) (citing *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000)). *See Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir. 1996) (holding that "[t]he conduct of discovery is committed to the trial court's sound discretion." The trial court did not "condone" obstructionist tactics in refusing to grant sanctions). Specific to when deciding whether to dismiss a case as a sanction for discovery abuses, "the district court must balance its 'need to advance its burdened docket against the consequence of irrevocably extinguishing [a] litigant's claim.'" *Empire Bank*, 341 F.3d at 797 (citation omitted). While a district court is advised to first consider lesser sanctions, *Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000), "[t]he futility of lesser sanctions is a further consideration in the district court's balancing calculation." *Empire Bank*, 341 F.3d at 797 (citing *First Gen. Res. Co. v. Elton Leather Corp.*, 958 F.2d 204, 206 (8th Cir. 1992)). Moreover, imposing a sanction on a litigant "is proper only if just and expressly related to the particular claim." *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 935 (8th Cir. 2004) (citing *Keefer*, 238 F.3d at 941).

## DISCUSSION

Federal Rule of Civil Procedure 37 "'provides generally for sanctions against parties or persons unjustifiably resisting discovery.'" § 2281 History and Purpose of Rule, 8B Fed. Prac. & Proc. Civ. § 2281 (3d ed.) (quoting Advisory Committee Note to 1970 amendments of Rule 37, 78 F.R.D. at 538). In the Eighth Circuit, "[i]mposition of discovery sanctions requires 'an order compelling discovery, a willful violation of that order, and prejudice to the other party.'" *Mallinckrodt*, 373 F.3d at 934 (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)). *See Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012) ("As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37 the Defendants must have violated a Court Order."); Fed. Prac. & Proc., *supra*, at § 2282 ("The general scheme of [] [R]ule [37] is that ordinarily sanctions can be applied only for a failure to comply with an order of the court."). The Court is unaware of any order that Defendants violated during discovery. In fact, Davis has not argued that Defendants have failed to disclose certain information during discovery in violation of a court order. As such, Davis has failed the first prong of the Eighth Circuit's three-part test for Rule 37 sanctions–an order compelling discovery. *See Countryside Cas. Co. v. Orr*, 523 F.2d 870, 872 n. 3 (8th Cir. 1975) ("The

sanctions found in Fed.R.Civ.P. 37 are the only relief available for failure to make discovery.") (citations omitted). Thus, Rule 37 has no application here.

Under Federal Rule of Civil Procedure 11, district court impositions of sanctions are reviewed under the deferential "abuse of discretion" standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* A Rule 11 sanction might

> be warranted when a pleading is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Fed.R.Civ.P. 11(b)(1), contains allegations or factual contentions that lack evidentiary support, Fed.R.Civ.P. 11(b)(3), or contains denials of factual contentions that are not warranted on the evidence. Fed.R.Civ.P. 11(b)(4).

*Clark v. United Parcel Service, Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006). Furthermore, "Rule 11 sanctions are imposed only in response to claims that are not 'warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003) (quoting Fed.R.Civ.P 11(b)(2)). Fatal to Davis's claim that Rule 11 has application here, however, "Rule 11 expressly does *not* apply to disclosures and discovery requests or responses subject to Rules 2[6] through 37." *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 334 (N.D. Ia. 2007) (citing Fed.R.Civ.P. 11(d)[5]) (emphasis in original). *See Perkins*, 965 F.2d at 601-02 (upholding Rule 11 sanctions based on motion practice unrelated to discovery). Here, Davis came into possession of Exhibit 2 through Defendants' initial discovery disclosure. Beyond that, however, Exhibit 2 has not been relied upon by Defendants, not even in their pending motion for summary judgment, Doc. 68. Therefore, Rule 11 does not apply.

Unlike sanctions imposed under Rule 11, which are imposed at a court's discretion, Federal Rule of Civil Procedure 26 "requires sanctions if a violation of the rule is found." *Books Are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532, 550 (S.D. Ia. 2007) (citations omitted). "Rule 26(g) sanctions are designed 'to deter abuse and compensate the opposing party for all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Id.* (quoting *Johnson Int'l Co. v. Jackson Nat'l Life. Ins. Co.*, 19 F.3d 431, 439 n. 10

---

[5] Part (d) reads, "This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed.R.Civ.P. 11(d).

6

(8th Cir. 1994) (internal quotations and citation omitted)). Rule 26(g) sanctions are proper "'when the signing of [a discovery request] is incomplete, evasive or objectively unreasonable under the circumstances.'" *Id.* (quoting *St. Paul Reinsurance Co. Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 515 (N.D. Iowa 2000)) (alteration in original). *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oreg. Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir. 1996) (using "an objective standard to determine whether a party or attorney has responded or objected to a discovery request for an improper purpose."). "The most obvious situation where sanctions are appropriate occurs when a party or its attorney submits a false discovery document." *Rosebrough*, 239 F.R.D. at 551 (citing *Perkins*, 965 F.2d at 600 n. 5). Submitting a false discovery document–or fabricating evidence–"has been referred to as 'the most egregious misconduct' which justifies a finding of fraud upon the Court." *Interpreter Services, Inc. v. BTB Technologies, Inc.*, No. CIV 10-4007, 2011 WL 6935343, at *8 (D.S.D Dec. 29, 2011) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Antitrust Actions)*, 538 F.2d 180, 195 (8th Cir. 1976), *abrogation on other grounds recognized by Briscoe v. County of St. Louis, Missouri*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012)). For a court to find such a fraud has been committed, it "must be supported by clear, unequivocal and convincing evidence." *Antitrust Actions*, 538 F.2d at 195 (citing *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120 (2nd Cir. 1970), *cert. denied* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970)).

Here, Davis has not met the burden of proof required in order to impose sanctions on Defendants. Davis's motion is premised upon conclusory arguments with limited factual basis beyond her denial that she ever sent the email. The crux of Davis's factual basis for argument is that the heading and font of the "falsified" email in Exhibit 2 differs in appearance from the two other emails in the chain. Doc. 90-5. Outside of that, Davis offers no other evidence as to the email's inauthenticity other than her own denial. *See* Plaintiff's Brief in Support of Amended Motion for Sanctions, Doc. 90, at 8-9 ("[T]he font of the reply e-mail is different from the font of the original e-mails exchanged between Plaintiff and Sullivan on the same date. The heading of the alleged reply e-mail also differs substantially from the two prior e-mails. Unlike the other e-mails, the names of the persons to whom the emails were sent from and to are underlined in Plaintiff's alleged reply e-mail. Further, in the two prior e-mails, the 'Sent' line is directly below the "From" line and lists the date and time sent in the following manner: 'Monday, November 29, 2010 12:31 PM' and 'Monday, November 29, 2010 12:38 PM.' The 'Sent' line on Plaintiff's

alleged reply e-mail, however, is indented several inches. The format of the date and time also differs from that of the earlier e-mails: 'Sent: 11/29/2010 2:22:30 PM.'). These formatting distinctions together with her denial, however, fail to meet the clear and convincing evidence standard.[6]

Examining the inconsistencies found in one of Davis's own exhibits, "Plaintiff's Exhibit B" attached to Davis's brief in support of sanctions, Doc. 90-3, weakens Davis's argument regarding Exhibit 2. Plaintiff's Exhibit B is another version of Exhibit 1A. Absent from Plaintiff's Exhibit B is the claimed fake reply email from Davis to Sullivan. Instead, like Exhibit 1A, Plaintiff's Exhibit B is the forwarded two-email chain from Davis's CESCO email account to her Yahoo account. The uppermost email heading in Plaintiff's Exhibit B is distinct in font, spacing, and arrangement from the headings of the emails lower in the same chain. The next heading down is itself distinct from all other headings in the chain. Based on Davis's reasoning regarding Exhibit 2, the first two emails contained in Plaintiff's Exhibit B must be inauthentic. It appears to the Court, however, no less plausible that the top email in an email chain bears a distinct heading from the remaining emails in the same chain in order to indicate to the reader which is most recent. *See* Affidavit of Becky Purington, Doc. 95-2, at 1, 3, 6-7, 9, 12, 16, 24, 33 (top email in email chains all bear distinct headings compared to other emails in the same chain); Second Supplemental Affidavit of Lisa A. Davis, Doc. 97-1, at 1 (same). Davis offers no argument or evidence making her explanation more compelling than others. As a result, considering all of the evidence, she has failed to proffer clear and convincing evidence. *See Bright v. First Sr. Financial Group*, No. 12-360, 2013 WL 3196392, at *9 (E.D. Penn. June 24, 2013) (refusing to find emails "conclusively fake" based solely on inconsistent dates on the emails in the chain).

As discussed, there exist two email chains in issue–Exhibit 2, containing the "false" reply email from Davis, and Exhibits 1A and 1B, which are two copies of the same chain and do not contain the "false" reply. *See, supra*, "Background" and note 4. Exhibit 2, attached to Davis's amended motion for sanctions, Doc. 90-5, was retrieved from Defendants' email archival system. Defendants' Brief in Opposition, Doc. 93, at 4. Exhibit 1B, attached to Defendants' motion for summary judgment, Doc. 69-9, on the other hand, is from Davis's personal Yahoo email

---

[6] In her Reply Brief, Davis recounts "[o]ther duplicitous acts of Defendants" in support of her motion for sanctions. Plaintiff's Reply Brief, Doc. 96, at 3-5, 7-8, 9. However, because Davis's motion for sanctions is predicated solely on the claimed falsified email, these other acts by Defendants will not be considered by the Court.

8

account. Defendants' Brief in opposition, Doc. 93, at 4. As Defendants argue in their opposition brief, "Even if the fonts of [Exhibits 1B and 2] can be viewed as different fonts apart from sizing and spacing, the difference does not imply that one email was altered or 'doctored up.' The emails were simply accessed from different sources and different email servicing platforms." *Id.* The Court finds Defendants' assessment to be at least as plausible as Plaintiff's

For the sake of comparison, Exhibit 1A, Doc. 97-2, and Exhibit 1B, Doc. 69-9, appear to be two copies of the same two-email chain, but look markedly different. Exhibit 1A contains long, horizontal, parallel lines separating each email; Exhibit 1B does not. In addition, the spacing of the email text in Exhibit 1A is much longer than the spacing in Exhibit 1B. Yet, Davis does not assert that one copy was faked and the other not. Instead, Davis asserts that one copy, Exhibit 1A, was retrieved from Davis's CESCO email account and the other, Exhibit 1B, from Davis's Yahoo email account. Based on Davis's argument for sanctions, however, because of the differing styles of Exhibits 1A and 1B, a Court should infer that one was faked. This Court rejects such an inference, however. Likewise, the Court rejects the argument that Exhibit 2 must be falsified based solely on the premise that it differs in font and style from Exhibit 1B. Additionally, simply because Exhibit 2 contains a third email not present in Exhibit 1B is not sufficient evidence that Exhibit 2 was faked. As Defendants note in their brief in opposition, it is plausible that Davis simply forwarded the two-email chain between her and Sullivan to the Yahoo account directly from her CESCO email inbox. Doing so would not include her response email. Defendants' Brief in Opposition, Doc. 93, at 5 ("Davis would have had the option to forward an email from either her inbox or sent box. Davis's election to forward an incoming email does not speak to whether she sent a response. Therefore, this allegation does not support a finding that the email was altered."). Premising an argument of fraud on the existence of a third email in Exhibit 2 and the differing appearances and the denial of sending the additional email is not clear and convincing evidence in the face of the alternate plausible explanations.[7]

Thus, while the Court finds that Davis has presented insufficient evidence to support her motion for sanctions, she would still be free to testify at trial that she did not send the third email contained in Exhibit 2. *See* Second Supplemental Affidavit of Lisa A. Davis, Doc. 97, at 3 (referring to the reply email contained in Exhibit 2, Davis asserts, "This is a totally false,

---

[7] In fact, Davis's own expert, a forensic document examiner retained in connection to her pending motion to compel, Doc. 101, states that, on this current record, "there is no means of knowing the true origin or destination of [] [Exhibit 2]." Affidavit of Michael N. Wakshull, Doc. 106-1 at 3.

9

fictitious statement that I never made, and in which I never sent to Mr. Sullivan."). The authenticity of and whether or not Davis sent the disputed reply email would be for the jury to decide and this Court's decision on Davis's motion for sanctions will not affect her ability to contest the email at trial. *See Asch Webhosting, Inc. v. Adelphia Business Solutions Inv. (Adelphia), LLC*, No. Civ.A. 04-2593(MLC), 2006 WL 1098235, at *7-8 (D.N.J. Mar. 31, 2006), *aff'd* 362 Fed.Appx. 310 (3d Cir. 2010) (holding that questions of fact remained as to whether certain emails were sent and that the jury would be capable of judging inconsistencies in testimony and assessing witness credibility) (unpublished opinion). *See also Guang Dong Light Headgear Factory Co., Ltd. v. ACI Intern., Inc.*, No. 03–4165–JAR, 2008 WL 53665, at *13 (D. Kan. Jan. 2, 2008) (concluding that any finding as to the propriety of a sent email is a question of fact requiring a credibility determination and "a determination of intent and motive by a factfinder."). Davis invites this Court to conclusively find as fact that Exhibit 2 is a fake. The Court rejects the invitation and, instead, will allow a jury to judge the authenticity of the email for itself. "Accordingly, the Court will not impose sanctions where the Court would have to 'implicitly engage in fact finding that is typically reserved for a jury.'" *Adelphia*, 2006 WL 1098235, at *7 (quoting *In Re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 796 (3d Cir. 1999) (citation omitted)).

Davis also asserts that supplementing their response to the EEOC is evidence that Defendants manufactured Exhibit 2. Plaintiff's Reply Brief, Doc. 96, at 7 ("[T]his allegation is nonsensical. Given the fact that Skinner accessed Plaintiff's CESCO email account to obtain the November 29, 2010 email that she provided to the EEOC on August 1, 2011, there was no reason for her to access the CESCO archives to retrieve the email a second time on August 23, 2011."). Through Defendants' supplementation, Davis wishes this Court to draw the conclusion that Defendants fabricated the email subsequent to their August 1, 2011 response to the EEOC in an effort to mislead the EEOC in its investigation. Davis offers no substantiation as to why her explanation should be accepted, as opposed to others, aside from her conclusory argument, which the Court rejects. The Court does not condemn what appears to be double-checking or following-up one's research through different source material. In fact, based on Davis's own argument, Skinner could have accessed Exhibit 1A directly from Davis's email and Exhibit 2 from CESCO's archival system. Plaintiff's Reply Brief, Doc. 96, at 7.

10

Instructive here is *Interpreter Services, Inc. v. BTB Technologies, Inc.*, No. CIV 10–4007, 2011 WL 6935343, at *8 (D.S.D Dec. 29, 2011). There, the defendants, BTB Technologies, moved for sanctions pursuant to Federal Rules of Civil Procedure 12, 26, 37, and the court's inherent constitutional authority. During an evidentiary hearing, the parties agreed that an exhibit entered into the record by the plaintiffs was not the same version that was presented by the defendants to the plaintiff's counsel. *BTB Technologies*, 2011 WL 6935343, at *7 ("During the November 1 evidentiary hearing, the parties agreed that EX 1 is not the version of BTB 0434, 0435, and 0436 that was delivered by the defense to Christenson's office."). The email the parties agreed was faked purported to be an exchange between defendant-Thomas Dafnos and Wesley Waite, Dafnos's previous business partner. The subject matter of the email was a plan between Dafnos and Waite to "ruin" Kasey Entwisle, owner and sole shareholder of plaintiff Interpreter Services, Inc. *Id.* at *1 n. 3. According to the *BTB Technologies* court,

> In addition to the parties' agreement, a review of EX 1 supports the conclusion that the emails are fake. For example, the text is misaligned on the page. The Bates numbers are not uniformly placed as they would be by a computer generated program, and in one instance the number is partially obscured. In one message, the subject line says "I Need....." but in the reply to the same message it says "I need...." In one of the messages, Wes Waite, Sr.'s name is missspelled (sic) as "Wes Waites, Sr. (sic) Finally, there is an obvious "cut and paste" line across the bottom of the fake BTB 0435.

*Id.* After considering the testimony and evidence presented, the *BTB Technologies* court concluded that sanctions had to be imposed. In so concluding the court noted,

> Despite knowing that Bratkiewicz[, BTB's counsel,] and the purported sender and receiver of the fake emails (Dafnos and Waite) all denied their authenticity under oath, on April 14, 2011, Christenson supplemented the Plaintiff's Rule 26 Initial Disclosures to use the fake emails as part of the record in this case, if not as evidence. There was no purpose to serve by placing the fake emails into the record if not to enhance the Plaintiff's position in this lawsuit.

*Id.* at *8.

Here, unlike the fabricated email chain in *BTB Technologies*, the parties have not all agreed that Exhibit 2 is fake. Moreover, the email chain in *BTB Technologies* contained obvious flaws and inconsistencies that do not exist here. Davis has pointed only to the fact that the uppermost heading on Exhibit 2 is distinct from the remaining headings in the email. In light of the discussion above comparing other email headings in the record, however, Davis's argument

11

falls short of clear and convincing evidence. The constant among Exhibits 1A, 1B, and 2 is the initial two-email exchange between Davis and Sullivan. Outside of the font and style of Exhibit 2's heading and the presence of the reply email, however, there are no misspellings, syntactical differences, partial obstructions, or obvious copying and pasting among the three Exhibits as there was in *BTB Technologies*. Again, any question surrounding Exhibit 2 regarding the email's authenticity should and will be left for the jury to decide. The Court will not take that question away from the jury based on the current record. To that end, the Court will also not impliedly act as the finder of fact by imposing sanctions here.

## CONCLUSION

Although a third email exists in Exhibit 2 that is not contained in either Exhibit 1A or 1B, Davis has failed to convince this Court by clear and convincing evidence that the claimed email in question from Plaintiff is a fraud created by Crescent Electric. Unlike *BTB Technologies*, the parties to this litigation do not all agree that the email in issue was faked. Instead, Defendants have offered plausible alternative reasons for Exhibit 2's presence in the record. Davis has failed to show why her explanation should be accepted over others. Instead, Exhibit 2's authenticity and whether it is legitimately present in the record will be assessed by the jury after hearing from both Davis and the Defendants.

The Court is concerned that the additional discovery that this evidentiary issue will present is both going to delay the case and cost both parties more effort and expense. Given that at this point the issue of the email will be presented to the jury, the Defendants will presumably retain an expert on the issues presented concerning the authenticity of this email. Given the questions presented, the Court is going to allow Plaintiffs the additional discovery that has been resisted by the Defendants.

Although this email does present a question to go to the jury, the Court also has to consider the application of Rule 403 of the Federal Rules of Evidence. The claimed email is peripheral to the issues in this case. The trial scrap of the authenticity of the email is going to unduly delay the trial, it is going to largely be a waste of time, and it has a good probability of confusing the true issues in the case and misleading the jury. The Court recognizes that but for these 403 concerns, the Court would simply present this issue to the jury. Without ruling at this time on its 403 concerns, the Court suggests that the parties consider the following: If the email issue by agreement of all of the parties does not proceed, then there will be no discovery as the

Court is otherwise going to allow, and the claimed email will not be offered for consideration by the jury.

The parties must notify the Court within 20 days from the date of this Order whether or not they agree with this proposal. If not, the discovery will proceed even though the Court might still exclude the claimed email because of Rule 403 concerns.

IT IS ORDERED that Plaintiff Lisa A. Davis's Amended Motion for Sanctions Against Defendants, Doc. 89, is denied without prejudice. The parties will bear their own attorneys' fees and costs. Within 20 days from the date of this Order, the parties will advise the Court whether or not they have agreed to the Court's proposal. If not then, 20 days thereafter, the parties shall submit simultaneous briefs on the Rule 403 concerns.

Dated this 21st day of April, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summa Unkfrd
Deputy